All rise. The Fourth District Development Board of the State of Illinois is now convened. The Honorable Amy C. Lannard presenting. You may be seated. Good morning to everyone. We are here in Ray Marriage of Taylor C. and Joel V. Case number 4250061. And counsel for the appellant, if you'll please state your name for the record. Lindy Geisler for the appellant, Your Honor. Thank you. Counsel for the appellant. Ashley Davis for the appellant. Thank you. Counsel, whenever you're ready. May it please the Court. I'm here today to represent the appellant, Taylor, in her appeal based on the decision of the Circuit Court of the Ninth Judicial Circuit in Fulton County, Illinois. The decision denied Taylor's petition to relocate with the party's minor children from Macomb, Illinois to Greenville, South Carolina. Taylor's appeal is based on the argument that the trial court erred in their findings regarding factors 1, 3, 4, 6, 7, 8, 9, and 10. And that those findings were against the manifest way of the evidence. Taylor also argues that due to those findings that the court's ultimate finding that denying the petition to relocate was within the best interest of the children was also against the manifest way of the evidence. First, as to factor 1, the intended reasons for relocation, Taylor testified as to multiple reasons for relocating. All of those reasons were based off of what Taylor believed to be in the best interest of the children. A majority of that was due to the educational, recreational opportunities available in South Carolina for the children that are not available here in Macomb, Illinois. Taylor, also, if I may. Yes. Just to confirm, I mean, the standard of review that we have here is very deferential. Would you agree? Yes, Your Honor. And so it seems to me that the trial court did find Joel to be more credible than Taylor on the record. Yes, Your Honor. And so with that, it also seems that the court did not find her basis to relocate to really be driven by the educational benefits. So could you address that for me? Yes, Your Honor. At the conclusion of the trial, the court stated to the parents on the record that both parents had what the court felt was in the best interest of the children in mind. The court also contradicted itself throughout its written opinion by at one point stating that the court did believe that the educational opportunities were why Taylor was wanting to relocate and that it was better for the minor children. And then later on in the opinion, the court stated that that was just an excuse. Taylor is not arguing for, there's no self-serving reasons why Taylor wants to relocate. Yes, her husband did secure employment there. However, that was because he had to find new employment and Taylor was hoping to be able to relocate to South Carolina. So Taylor herself is not necessarily benefiting from this move other than would be able to return to reside with her husband who is living there. But that move was also based on the best interest of the children. Another reason, which is in my brief, is that there were exhibits that were provided that we believe were considered by the court in making the findings that it did on Taylor. As I said at the end of the trial, the court stated to both parties that they both loved their children and clearly wanted what was best for them. They just had different ideas as to what was best for the minor children. And then once the court issued its written opinion, the court changed its mind and found that Taylor was vindictive and foul-mouthed. Let's talk about those exhibits if we can for a moment. You've claimed that the court only admitted Joel's exhibits 7, 11, 18, 21, 22, 26, and 27. But it appears to me the court actually admitted more exhibits than that. That they admitted 3, 4, 7, 10, 11, 13, 18, 21, 22, and then 23 through 29. Have you looked at the record again to confirm those numbers? Your Honor, yes. It was my understanding a majority of the exhibits were not actually admitted and that the exhibits that were admitted were the ones that I had cited. Okay. And then in your brief you referenced the fact that the court cited not only exhibit 18, which I think you agree had been admitted, but also exhibits 19 and 20. And when the court talked about that, they indicated that it showed Taylor was vicious, vindictive, and used foul language when she did not get her way. But when I look at those two exhibits that the court actually referenced and relied on, it doesn't seem that 19 and 20 present any evidence that she was vicious, vindictive, or used foul language. Is it possible the court just inadvertently included those exhibits? Your Honor, I do agree that those exhibits wouldn't be showing that she was foul-mouthed. However, it's our argument that the court's lack of detail when examining the exhibits indicates that the court very likely also reviewed the exhibits that weren't admitted, which would also indicate why the court had such different findings on Taylor following the trial. If the court doesn't mention those two items or if they don't show that, then how is she prejudiced if the court erroneously refers to them? Your Honor, I believe that the evidence that was actually presented at trial along with the court's statements at trial show that the court had a different feeling and opinion as to Taylor as it did after reviewing the evidence further and writing the written opinion. And that is why that would be an assumption. Okay. Thank you. You may continue with your argument.  Moving on to Factor 2, which is not addressed in our brief. That is because that is the reason that the non-relocating party is opposing the relocation. Taylor does not argue that Joel has valid reason to oppose the relocation as he wants to spend as much time with the children on a frequent basis as possible. However, case law shows that typically when both parents have valid reasons that these factors neutralize one another. So if anything, Taylor would be arguing that factors 1 and 2 neutralize each other. Back to Factor 1, case law states that in order to find there was an improper reason for wanting to relocate, the court will consider whether the reason for relocating was a ruse to interfere with the non-relocating parent's visitation and parenting time. Here, Taylor is offering a basically similar amount of parenting time for Joel. There is evidence that Taylor allowed Joel extra time in the past. There was no testimony other than Joel indicating that Taylor had refused FaceTime calls, but there is no further evidence on when those occurred or how frequent. There is no other evidence that Taylor otherwise tried to limit Joel's parenting time in any way. So as to factors 1 and 2, Taylor believes that both parties have proper motives and that those factors should neutralize one another. I have a couple of questions. If I were the trial judge, I think I would have inquired, and maybe I missed this, that her present husband has had nine jobs in ten years and now is taking a job in another state. There's got to be a back story to that. If the back story is just progressive promotions, that would be one thing, but I would want to know more about that. Yes, Your Honor. Taylor's husband has worked in multiple school districts, however not nine different school districts. He has had promotions throughout the school districts where he worked, and also the most recent school district where he worked, he was an assistant principal, and they were eliminating that position. So at that time he had to find new employment. My second question is, what is it in the record that substantiates the schools in Greenville, South Carolina, are superior or offer more opportunities than the schools in the Children's Home District? Your Honor, Taylor testified to the school. In addition to that, there were exhibits provided from both states' Board of Education showing the ratings of the school, where the schools that Taylor intended to enroll the children in in South Carolina were exceeding. The schools in their home were below average.  You may continue with your question. Next is the history, factor three, the history and quality of each parent's relationship with the children. Here the court cites that Joel has exercised every opportunity he's had for parenting time. Taylor does not dispute that. However, the factor is to consider both parents' history of exercising parental responsibilities and whether they failed to exercise any of those responsibilities. There is plenty of evidence presented at trial showing that Taylor has exercised everything she can as far as parental responsibilities, including decision-making and parenting time. Other than parenting time, there was evidence on both sides that Joel had failed to attend anything related to schooling up until the petition to relocate was filed. The child was in a sport. One child was in a sport and Joel did not attend, as well as Joel had never taken his vacation time until the petition to relocate, despite the fact he only ever had two overnights at a time. So about the vacation, if I may just inquire, is that because he just didn't take vacation time normally or that he just wasn't exercising the time in the summer? Yeah, he had just never requested, even if he is not off of work going on vacation, he still had the two weeks allotted to him to have the children for two weeks during the summer, and he had never asked to take that time. And so I guess one question I have is then as we evaluate the proposal that the court evaluated as to the children being with him six weeks in the summer, how is that time comparable, if you will, if he's working Monday through Friday, if you will, eight to five versus every weekend where he's off work during that time and can focus on the children? Yes, Your Honor. The six weeks during the summer, that was not the only time offered to him. He was also offered the majority of the children's spring break along with Christmas break and major holidays. So the six weeks is inaccurate. I believe it's closer to 11 weeks of parenting time that he would get. While he would have to have child care, he would still have the children for long periods of time, at times when they're not in school, where they might not be required to go to bed early, but he would be able to do more activities with them rather than coming home, getting ready for the next day. Was there evidence as to how easily it might be to have, you know, if you have child care, usually we think about something and you have to plan for that. It's difficult sometimes to get into those centers and it can take a while. So was there any evidence as to the ease at which he could obtain what I would say temporary child care just for a summer? Was there any evidence in the record? Your Honor, Joel lives with his parents and his mother works as a part-time substitute teacher and testified that she was off during the summers. Joel had previously had parenting time over holidays where he would presumably have been working and has never required actual child care. His sister-in-law that also testified, she spends a lot of time at Joel's parents' house, where Joel and one of his brothers resides, said that she is a teacher and is off during the summers as well and spends time there. Thank you. With regard to Joel not attending some of the events, didn't he testify it was because of the animosity of the new husband? That was to one t-ball game. He said that he did not go because Chad was going to be present. When inquired why he had never attended parent-teacher conferences or school events, he said that it was due to his work schedule, although he gets off around 4 p.m. and those events are usually in the evening so other parents can attend as well. The next factor, which we've already somewhat discussed, would be the educational opportunities for the children at the existing location and the proposed new location. Taylor testified, as I stated, to the opportunities in South Carolina along with the exhibits that were admitted without objection as to each state's Board of Education. Taylor also testified as to the extracurricular opportunities that would be available at those schools and the exhibits listed those as well. The court itself inquired as to whether Taylor had research schools that would be closer to Macomb, which Taylor did in fact testify that she had. However, South Carolina has school choice where you can live anywhere in the state and attend any of the public schools as long as you have transportation. Illinois doesn't have that, so Taylor testified that she would be unable to. They looked at other school districts, but due to them being unaffordable, they would have to purchase a small condo that would likely not fit the family. As well as all of the schools that were mentioned were over 50 miles from Macomb, which would require her to file a petition to relocate and would be considered a relocation in itself. While the court acknowledges that the opportunities are likely better for education, the court basically based its reasoning on the fact that Taylor did not exhaust all options that were closer to Macomb, which Taylor did testify she did look into other options. All of the options mentioned by the court and opposing counsel were over 50 miles away. Counsel, if I may there, why wasn't it reasonable, though, for the court to think that her failure to look at schools closer could be a reasonable inference as to her credibility? Your Honor, I believe that Taylor did testify that she did look, and it says in the record that she did look at other schools. That testimony was just ignored by the court. I believe Taylor mentioned Naperville specifically as one of the schools. Did she indicate, though, that they wouldn't be able to afford that? That, yes. And so if we're looking at what's closer, I think the question becomes, there's a lot of things closer than Greenville. Even if you're looking at a different state and we work our way. So I guess, why was it not reasonable for the court to make that inference? Your Honor, I would agree that it could be reasonable for the court to make that inference. Taylor did testify that the reason for South Carolina specifically was due to the school system, as she had done a lot of research into the school system there. Thank you. The next factor that Taylor is disputing is factor six, the anticipated impact of the move on the children. The court cited that neither party presented evidence as to what the actual impact would be, which is correct. However, Illinois case law states that there will always be some impact and that adjustment is part of any move. Taylor testified as to why she thought the children would be able to address, which would be having a similar amount of time with their father still and having frequent contact with him. This also ties into factor ten, which is the minimization of the impact of the relationship between Joel and the children. Taylor testified that she would allow remote communication. She was not usually a fan of video games. However, she would be willing to allow their son to use a switch so that he could play games with his father. There was testimony that Taylor had refused to allow FaceTime calls. However, Taylor did deny this and there were no phone records presented or no specific dates or times when she did not allow FaceTime calls. Contrary, there was evidence, which was because of, again, the animosity between Joel and Taylor and her new husband, that Joel did, in fact, hang up on a FaceTime call that Taylor was on with the children. There were no specifics as to what calls Taylor did not allow with the children. Taylor believes that the consistent contact with Joel, along with being able to have a similar amount of parenting time, would minimize the impact on the children. Also, it would allow Joel to spend longer times, do things with the children, enroll them in extracurriculars, which right now he might not have the chance to do, as the parties live an hour and a half away from each other. So when the children are in Macomb during the week and Pekin on the weekends, it's difficult for them to participate in activities in either place unless the parents drive them back or the activity only takes place on that parent's parenting time. The next is Factor 7, which is whether the court would be able to fashion a reasonable allocation of parental responsibilities. Illinois case law is clear that it is not whether, it's not the status quo in regards to being reasonable. It's whether there is a schedule that can foster and preserve the relationship with the children and the non-relocating parent. Here, Joel would still have essentially the same amount of parenting time. It would be spread apart, but the parties also both testified that the children have struggles with exchanges. Right now they're exchanging every week, and they both testified these are an issue. If the exchanges are an issue, Joel, with this schedule that was proposed by Taylor, would have a similar amount of parenting time and fewer exchanges, which would hopefully be better on the children. Also, as far as traveling, Taylor had testified that she would be willing, her and Chad would be willing to pay for the expense to get the children back and that she would be responsible for that. Other than two extra weekends that she proposed the parties could meet halfway if Joel wanted to exercise those long weekends. Taylor stated that her and her parents would be willing to accompany the children to travel if necessary. Joel would not have to bear the burden of any travel unless he wished to come to South Carolina, which Taylor testified he would be welcome to do at any time, and that was part of her proposal. Additionally, the children currently spend each weekend three hours in the car going back and forth between the homes. This time would actually be reduced. Although their rides, if they traveled by car, would be longer, the total hours that they would spend if they drove each time from South Carolina to Illinois would be 108 hours, whereas they currently spend approximately 156 hours in the car going back and forth between the homes across central Illinois each week. Thank you, Counsel. I believe you are out of time. You'll have time in your letter. Thank you, Your Honor. May it please the Court, Counsel. As I stated, I am Ashley Davis, and I am here to represent the respondent appellee, Joel Van Tine. We're here on an appeal filed by the petition repellent, Taylor Cox. As just slight background for counsel, the parties were married in June of 2013. The judgment of dissolution was entered in March of 21. The parties have two children, which are really a factor in this case. We have Luke, who was 7 at the time of the trial, and Bella, who was 5. A parenting plan was entered at the same time as the judgment, which was in March of 21. The parenting plan provided that Taylor was to have primary time with the children. She lived in Macomb, Illinois, and she had the children during the week. Joel, who lives in Pekin, Illinois, had parenting time every weekend from Friday at 5 p.m. until Sunday afternoon. And the parenting plan also provided that the children were to attend public schools in Macomb, and this was going to be based on Taylor's address. The children had done this, and the children had been attending public schools up until the time when the petition for relocation was filed in that particular school year. So Taylor filed a petition to relocate to Greenville, South Carolina, in March of 24. This matter proceeded to trial in September of 24, and the court entered its opinion in December of 24, denying Taylor's request to relocate with the children. This appeal now follows. Now, I think it's important to note out that the appellant has a very high standard to successfully overturn the trial court's opinion here. Relocation cases center around the best interest of the children. So this is not a simple bright-line test, as the courts have said, but rather these are case-by-case analyses depending on the circumstances of each case. The court should not overturn a trial court's findings unless it is clearly against the manifest weight of the evidence. And this standard is really appropriate, as Justice asked in some of your questions, as because the trial court has the opportunity to observe the parties, the witnesses, listen to the evidence presented, look at the evidence, look at the exhibits, and assess the temperaments and personalities, and then make determinations of credibility. The trial court is the one who sat with the parties that day and were able to see what they presented, how they presented in court, and assess whether or not they were telling the truth. If I may interrupt you there just for a moment, since you mentioned the exhibits that they would also consider. It does appear that Exhibits 19 and 20, and I discussed this with appellants, but I'd like you to address that as well. If they were not in fact admitted and the court referenced them, did the court do so erroneously? And isn't the appellant then prejudiced if the court is relying somehow on exhibits that were not to be admitted? I don't believe that the court was relying on those exhibits, Your Honor. Exhibits 19 and 20 were not presented in trial court. And if we look at what the court's statements and the court's order were versus what those exact exhibits are, I don't believe that the court is referencing Exhibits 19 and 20. The court is referencing Exhibit 18. And actually, as I said in my brief, I believe that this was merely a Scribner's error by the court putting down that they were looking at Exhibits 18 through 20, when really it was just Exhibit 18. Exhibit 18 was actually very important in this case. This was a text that was from Taylor to Jewell, and it was about the relocation. In this text, she was very threatening to Jewell. She indicated to him that if he did not agree with the relocation, that she would then be going after certain things. She would be going after more child support. She was going to make him pay attorney's fees. She was going to try to change the parenting plan regardless of whether or not she was allowed to relocate. And she made several threatening statements to him. Exhibits 19 and 20, which again were not presented to the trial court, and which I don't believe that the court actually considered in this case, had nothing to do with that. I believe Exhibit 19 was a text in which Taylor and Jewell were talking about something completely different, and Taylor actually made the statement, you're a good dad. But it had nothing defamatory or nothing discriminatory in that text. Exhibit 20 then, which again was not referenced at all, I believe was a text between Jewell and maybe Taylor's mother, that again had nothing to do with anything that the court was talking about in its opinion. So when the court wrote its opinion, I really do believe that this was just a Scribner's error, and the court was merely referencing Exhibit 18. And so therefore, I don't think that this was discriminatory to the appellant whatsoever. The court was relying on the exhibits that were properly presented. And as you stated, Justice, there were a lot more exhibits that were presented and were admitted by the court than the appellant seemed to think in her brief. I know that you went over the list, and I do believe when I had double-checked it on the record, those were the exhibits that were properly presented and admitted to the court. As you probably noticed in the brief, what we had done during the trial is an entire binder of exhibits had been handed to the judge. The judge had indicated to both counsel that he would only be admitting the exhibits that were properly admitted during the trial. Somehow, I don't know if it was the judge, I don't know if it was the clerk system, all of the exhibits got scanned in. But again, I don't believe based on the court's opinion and what the court wrote that he relied on anything that was not properly admitted because it just does not make sense with the statements that the court wrote. If we look at the court's opinion and what he specifically wrote, he wrote things such as Taylor was foul-mouthed, she was vindictive, she was controlling. And all of that can be seen in Exhibit 18. And then also some other texts that were between the parties about these similar circumstances, where if Jewel did not do exactly what Taylor wanted him to do, she got upset with him. She would say, you know, I'm going to take the children away. I'm going to change the parenting plan. And that's what I think the court really focused on. One thing that counsel mentioned that I think is important for this court to understand is at the end of our trial, the judge did make some comments to both parents in that he sincerely thought that both parents loved their children. And I don't dispute that today, Judge. I believe that Taylor sincerely loves her children and she wants the best for her children. But it's the exact same thing with Jewel. He sincerely loves his children and he wants the best for his children. The parents just currently have two different ways of looking at what is in the best interest of our children. And when they're not able to make that determination together, despite the fact that they have joint decision making, that's where the courts come into play. And that was the judge's responsibility. So I don't think it was inconsistent by the court to make the statements that he did in trial that he thought, you know, both parents loved their children and were trying to find the best interest, and also write the opinion that he did. Because on reflection and looking at the specific factors that the court was to look at in this case, under the statutory factors, he was able to go through each specific factor, say what he found, what evidence he heard, and why he was making the ruling he made. That doesn't conflict with his statement that both parents love the children. So I think that is important for the court to note here. And those statements by the trial court are not inconsistent whatsoever. Would you agree, counsel, that Taylor's interest should not be automatically subordinated to Joel's interest when it comes to the issue of relocation? I would completely agree with that, Your Honor. I think both parents have the opportunity under the factors to say what their interests are, what they're looking for for the children, and then prove what is in the children's best interest. At trial, though, it was Taylor's burden to prove that her interests, and by her interests, therefore become the children's interests, and that would be in the best interest of the children. It's her burden at the trial court, and then again it's her burden here today to show that relocation would be in the best interest. And based on the briefs, based on what we've heard today, I don't believe that Taylor has met that burden, Your Honor, because this court should not find that the trial court should be overturned unless we find that a manifest injustice has occurred. And I don't believe that's what we have here today. Let me ask a question. Yes, Justice. How did the trial court come to the conclusion or the inference that Taylor's examination of the schools in Greenville was simply for the purpose of justifying the move that she already wanted to make? At trial, Your Honor, Taylor presented a number of different reasons of why she wanted to move, but a lot of those reasons didn't quite add up as we went on throughout the trial. And so what it really came down to was she kept going back to, well, I think it's a better educational system. So that seemed to be her guiding light throughout the trial. Now, she put forth different reasons throughout the day. She put forth that her husband had received a job in South Carolina, so they wanted to move for that job. But the problem that came with that job was that job was only found after she filed the petition to relocate. And after they decided, well, this is where we want to go. This is where we want to live. These are the schools we want to send our kids to. Okay, we'd better find a job to go there. And so at that point, her husband then found a job, signed a contract, and had signed a lease on an apartment before we got to the date of trial, but, again, after all of this had been filed. Similarly, she made the argument that she was going to have family in South Carolina, so that would be then a support system for her parents. But, again, this argument somewhat fell apart when we were in trial. When her parents testified, especially on Cross, they testified that they had purchased this house in South Carolina, they would be available for the children. But when asked very specific questions about, well, how much time will you be spending there, how much time will you be spending with the children, they couldn't answer those questions because they weren't moving to South Carolina on a permanent basis. But if you'll note in the record, they were also keeping their house that they currently have in Illinois. They still somewhat run a business. They've mostly sold their business, but they do somewhat still run a business in Illinois that they're involved in. And so they testified that they would be going back and forth. And then we looked at how much time had the grandparents spent with the children here in Illinois versus how much time would they be spending in South Carolina. And, again, their testimony on this was not entirely clear. You know, they said in Illinois they were available to help out with exchanges, and they often did that. But then at certain times of the year, especially around the Christmas time, because I believe they were in a reindeer ranch, they were not available to help the children because they were working at their business, they were doing things like that. They would not see the children very often in, say, November, December months. When we talked about, okay, what's going to happen when you're in South Carolina? Are you going to be available for the children? Are you going to be there after school? As the support system, they weren't able to answer those questions. They said, we don't know how long we're going to be in South Carolina. We don't know what times of the year. We don't know, essentially, when we're going to be spending with the children. So to go back to answer your question, Justice, these were the kind of different reasons that Taylor was giving throughout the trial of why she wanted to move to South Carolina. But then, again, a lot of these reasons somewhat fell apart. And what was really the theme that I think the court picked up on and was accurate was that she was indicating, well, I want to move because the schools are there and the schools are better and we have more to do with the kids. She also mentioned the recreational activities. She mentioned going on hiking, going to the beach, going swimming, doing things like that with the children, which I think if we look at the court's opinion, the court found, well, that reason really isn't that good of a reason. There's just the same recreational activities in Illinois as there are in South Carolina. So Taylor then really had to stick to this education. And so I believe that's why the court found that, okay, education seems to be kind of the guiding force here. But I will say what the court also looked at and what I think this appellate court should look at is the age of the children here. We have children who are rather young. We have a 7-year-old, or at the time of the trial, a 7-year-old and a 5-year-old. We have a child who had completed first grade in the public school system and another child who is going into kindergarten. There was no evidence presented that they had struggled in school in Illinois, that they weren't succeeding in school, that the schools were not meeting their needs. Rather, all the evidence presented about these children and about these schools that they had attended was that the kids were doing well in school, they were succeeding, they were doing age appropriate. And again, we're looking at children that are young in young schools. They were meeting expectations. Joel was able to present report cards of the older child. And again, these are report cards saying, are you meeting expectations, are you not meeting expectations? And notes from the teacher that said, this child is a joy, he is meeting expectations, he is doing well. So for Taylor to say the schools are not meeting the needs of the children was not supported by the evidence whatsoever. So even if the court is to find, okay, maybe the schools in Greenville are rated better than they are rated in Macomb. Even if the schools do have School of Choice in South Carolina versus Illinois where we don't. We don't have any evidence that the schools in Illinois aren't meeting the needs of the children and aren't able to take care of what the children want. We also ran into the situation during trial in the school year that we had started when we were at trial. Taylor had actually taken the kids out of public school against Joel's wishes and enrolled them in homeschooling. And she was conducting a homeschooling program when we were in trial. This has not really been a part of the appeal because this was actually a rule to show cause that Joel had filed that the court then granted that the appellant is not appealing on that matter. So I think that actually adds another layer into this, Your Honor, in that we have this situation where the children weren't even given the opportunity for this next school year that we had entered to see how the schools were doing. Were they meeting the children's needs? Were they not? Were the children succeeding? Were they failing? We don't know because Taylor unilaterally took them out of school and was homeschooling them instead. She stated that she was doing this for a couple different reasons. One, she said the schools in Illinois were not meeting her needs, and so instead she was going to homeschool the children and take care of that. The other reason, though, that came out at trial was she said she was fully expecting the court to allow her relocation and therefore she didn't want to switch the schools for the kids in the middle of the year, and so she thought it would be easier if she was homeschooling them. She could then, just when the court granted the relocation, they could move to South Carolina. She could either continue homeschooling them or they could get them into the school program that they had talked about there. So the issue of homeschooling versus public school was actually another issue that came up because there were some questions about what was Taylor going to do about public school versus homeschool if she was given that choice. Because she said, well, I like homeschooling the children. I like being able to do this, and so therefore why did she even need the public schools in South Carolina if she was going to continue to homeschool the children? And that's a question that wasn't necessarily answered. Now, in this case, the court did grant Joel's petition for rule to show cause in order that the children had to be enrolled in public school, which post-trial has occurred at this point. Counsel, if I can circle back to one of the arguments that an appellate has made is that the court essentially seemed to state that the statutory factors favored denying those requests and perhaps favored Joel then, but the argument was made here today perhaps on evaluating some of the facts. The court should have determined that they either didn't support either party's position or were more neutral. So if you could speak to that issue as well before your time is up. The issue of the time that was proposed, the parenting plan that was proposed, why that is not comparable, if you will, to what Joel is receiving now. Sure, and I'd like to speak to the first part of that question very quickly, Judge. Just as an overview, I think if we read the trial court's opinion there, it didn't necessarily always say this factor favors Joel or this factor favors Taylor. What the trial court did was they went through the findings that they made under each factor, talked about the evidence, talked about the testimony, and then as a whole, looked at what did I find in the evidence, what did I find in the testimony, what did I find in the credibility, and looking at all of this together, found that relocation was not in the children's best interest, which I believe is the appropriate way for the trial court to look at this. Again, that it's not a factor by factor and that every factor has to be met or not met, but it's an overall what is in the best interest of the children. Moving on to the second part of your question, Justice, of looking at the parenting time and what was proposed by Taylor. We do not believe that what was proposed by Taylor would be in the children's best interest for a couple different reasons. One, there was going to be a huge travel time between the parties. It worked out to about an 11-hour drive one way. When we look at the time that was proposed by Taylor, she essentially proposed one week in October, two weeks at Christmas, and then I believe six weeks during the summer. Starting with the one week in October, she stated that in order to do this, she was going to have to take the kids out of school to be able to give that week to Joel. I believe the kids have a half week maybe in October, but they were still going to be missing several days of school in order for Joel to have that week. So I think that week in particular goes directly against her argument that she wants the kids in school and receiving a better education. Further, if we look at a week or even two weeks at a time, we have the situation where if we have an 11-hour drive one way, that right there takes out two days of the parenting time for travel time. So we're really cutting down that one week or that two week into a shorter period of time. So then that leads us to the summertime. The question is why is that summertime not appropriate? I think for a couple different reasons. One, we have a situation right now where Joel works full-time. He works Monday through Friday, and right now he can exercise quality time. Again, by agreement of the parties, the way that the current schedule is set up, that he has quality time with the children every single weekend where he is not working. If he is to get the children for six weeks in the summer, he will be working that entire time. He does not have the luxury of taking time off or having extended time with the children. So rather, the children either are going to have to be in a child care situation or he is going to be relying on his family members, which is a possibility to care for the children. And while that is in some ways good because the children are very close to his family and that was testified to by him and two other family members, that actually doesn't benefit Joel and the children in that they're not getting a lot of that quality time with dad. If dad, again, is working before they get up on Monday morning and then he is working until 6 o'clock at night or not getting home until 6 o'clock at night, during the day, they're not getting that quality time during the summer. Also, I think just the practicality of it, your honors. I'm sorry, Jessica, what were you about to say? Oh, I'm sorry. The practicality of it. Right now, Joel gets this time every single week. And we have very young children. These are children that we don't believe would do well going long extended periods of time without seeing either parent. We believe it would be very difficult in the summers for them to go six weeks without seeing mom. But we also believe it would be very difficult in the school year to go the entire school year or month at a time without seeing dad. And I see my time is up and I thank you, your honors. Thank you. Roberta, counsel? Thank you, your honors. First, as to Taylor making threats to Joel that she would change the schedule if Joel would not agree to the relocation, Taylor did testify at trial that even if the relocation was denied, she didn't feel that the current schedule was in the children's best interest. When that schedule was agreed to, the children were not yet of school age and Taylor was able to spend more time during the day with them. Taylor also was a photographer at that time and was busy on the weekends. So she did state on the record that she would ask to change the schedule either way. That was not just simply a threat to Joel. It was just that she no longer agreed that that schedule was in the children's best interest. Next, the opinion does not match what the trial court stated on the record regarding Taylor. As previously said by both opposing counsel and I, the court felt that Taylor had the children's best interest at heart and that both parents wanted what was best. They just thought they had different ideas about what was best. But then in the written opinion that came a couple months later, the court stated that Taylor was just using education as an excuse. The court did not state that on the record that day. In fact, the court stated the opposite. Taylor also began homeschooling the children. That is correct and she does not dispute that. However, Taylor had told Joel that even if the relocation was denied, that she would still want to move from the Macomb area as she had no family there and her husband had since moved. So Taylor was not stating that she believed that the relocation would for sure be granted and she could move the children to South Carolina schools. Instead, she said no matter what, she knew that where they were right now was not where they were going to be long term. Also, Taylor testified that her and Joel had previously talked about homeschooling and Joel was pro-homeschooling up until the point that it would allow Taylor the opportunity to take the children to South Carolina. Taylor was a teacher and was homeschooled herself. She had previously homeschooled at least one of the children, although it was for very early stages of their education. Her and Joel had agreed in the past that homeschooling was appropriate and a better option for the children. Taylor did attempt to ask Joel why he was not agreeable to homeschooling at this time and he simply would not discuss the issue. As far as Chad taking employment in South Carolina, Chad booked for employment in South Carolina because he knew that is where Taylor wanted the children to attend school. The whole reason for her wanting to go to Greenville as I stated was for the school system. Yes, Chad did get a job there after this petition was filed, but that is because in education, positions are usually filled during the summer. Chad had to get a job. He either had to risk taking that job for a school year or not having a job going to trial on this matter and then Taylor not being prepared as to what they would do when they went to South Carolina. I'm still perplexed with why is the school so important to her if she wants to homeschool them? Your Honor, she does not want to homeschool the children if they were allowed to relocate to South Carolina. She did not feel that the school, at least their son was exceeding starting at the beginning of the school year, what he was supposed to be doing by the end of the school year. She felt that he was not being adequately challenged and the school system in Macomb, Illinois specifically, Taylor felt that homeschooling would be a better alternative. That is why she wants to go to Greenville, South Carolina so that not only they would have the schools in Greenville available, but the schools across the state. The intention was not to continue homeschooling the children there. Other than the matters that you've already stated that the parents were moving to South Carolina and bought a home and that he had obtained a job, were there any other ties historically or otherwise to South Carolina that were in the record? No other historic ties, Your Honor, just that Taylor had also secured employment there, which she ended up having to turn down because our trial date was later than anticipated. So she ended up turning down that job and did secure at least a substitute teaching position and then was told she could reapply. Those are the only connections, Your Honor. Thank you. And also as far as Taylor's parents, they testified that they could not say for sure how much time they would spend in each state. However, they had sold most of their business and their former home. They downsized greatly. The home they now have in Illinois only has one bedroom. It's a very small cabin. They just use that to conduct their business when they come back. So they did testify that they did plan on spending a considerable amount of time in South Carolina and would be available for the children there and available to help bring the children back to Illinois if needed. Thank you, Your Honors. Thank you, Ms. Kiesler and Ms. Davis. The court will take this matter under advisement and the court stands in recess.